UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESIDENTIAL FACILITY, LLC,

    Plaintiff/Counter-Defendant,

v.

                                  Case No. 09-12346
                                  Hon. Lawrence P. Zatkoff

GREGORY S. CAMPBELL,
CHRISTOPHER J. DEBBAS, and
JAMES R. GRIFFITHS,

    Defendants,

and

ROBERT PINKAS,

    Defendant/Counter-Plaintiff/Third-Party Plaintiff,

v.

STERLING BANCORP, INC., PETER SINATRA,
SCOTT SELIGMAN, CAPITAL INVESTMENTS VII,

    Third-Party Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 31, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendants Debbas and Griffiths' motion to dismiss [dkt 18] and Defendant Campbell's motion to dismiss or transfer [dkt 23]. Plaintiff has responded to each of the motions. Defendant Campbell has filed a reply brief; Defendants Debbas and Griffiths

have not. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, the motions are DENIED.

## II. BACKGROUND

This lawsuit arises from a complicated series of business ventures and transactions that culminated in a July 2008 loan from Wachovia Bank ("Wachovia") to SJH Capital Partners, LLC, ("SJH"), and the subsequent default on that loan.

Defendant Gregory Campbell ("Campbell") is a resident of Pennsylvania. Campbell ran a small charter-jet company that, following several acquisitions, operated under the name of Sentient Jet Holdings, LLC ("Sentient")[1].

Defendants Christopher Debbas ("Debbas") and James Griffiths ("Griffiths") are investment bankers and residents of Pennsylvania. Debbas and Griffiths are partners in a private investment firm known as Julip Run Capital, LLC. Along with Campbell, Debbas and Griffiths are also partners in an investment firm called CD Ventures, which invests in Sentient.

Third-party Defendant Scott Seligman ("Seligman") was the owner of Presidential Aviation, LLC. Presidential Aviation was acquired by Sentient, and Seligman subsequently became an investor in Sentient. Seligman is a Michigan resident and is the majority owner of Presidential, LLC ("Presidential"). Presidential is a "Michigan-based company"[2] with its principal place of business

---

[1] This entity was previously known as JetDirect Aviation, and many of the pleadings refer to the entity under this moniker.

[2] It is unclear to the Court whether Presidential, LLC is incorporated under the laws of Michigan or Nevada.

2

in Southfield, Michigan.

Sentient had several investors, including CD Ventures (*i.e.*, Campbell, Debbas, and Griffiths), Presidential, and Defendant Robert Pinkas (through an entity known as Brantley Partners V)[3]. Despite these resources, Sentient still faced mounting financial troubles. In January 2008, Presidential increased its investment in Sentient by $5 million. CD Ventures also increased its investment at that time. In April and May 2008, Presidential invested an additional $1.5 million in Sentient.

Notwithstanding the additional capital infusions, Sentient continued to struggle financially. One of the parties involved in Sentient apparently had a "connection" with Wachovia that would allow Sentient to secure a substantial loan. Wachovia, however, would not lend directly to Sentient due to that entity's significant existing debt. Therefore, SJH was created for the sole purpose of securing the loan from Wachovia. SJH's membership included CD Ventures and Pinkas/Brantley Partners V. It also included Plaintiff Presidential Facility, LLC ("Plaintiff"), an entity specifically created by the principals of Presidential to participate in SJH and facilitate the Wachovia loan. Plaintiff is incorporated under the laws of Nevada and has its principal place of business in Southfield, Michigan.

Wachovia required additional protection for the loan. To entice Wachovia to make the loan, Plaintiff offered Wachovia an unconditional guarantee to repay 24.231%, not to exceed $3 million, of the approximately $12.4 million loan in the event of default. Shortly thereafter, the loan amount

---

[3]Brantley Partners V has filed a motion to intervene, and Pinkas argues that he was acting on behalf of Brantley Partners V at all times during the transactions at issue. This motion, along with the various motions filed in response to Pinkas's counter-complaint and third-party complaint, will be addressed by a separate opinion.

was amended to make available to SJH an additional $10 million. In support of the amended loan, Plaintiff again gave Wachovia an unconditional guarantee, this time for 59.348% of the total loan amount, not to exceed $13 million.

Plaintiff proffered its unconditional guarantees to Wachovia based on separate guarantee agreements (the "Agreements") between Plaintiff and Defendants. The Agreements guaranteed reimbursement to Plaintiff of any amount in excess of $3 million that Plaintiff expended under its unconditional guarantee to Wachovia. Defendants Campbell, Debbas, and Griffiths executed one such Agreement, and Defendant Pinkas executed a separate Agreement. As part of the Agreements, each Defendant pledged a certain commitment amount, as follows: (1) Defendant Pinkas—$5 million; (2) Defendant Campbell—$2.5 million; (3) Defendants Debbas and Griffiths—$1 million each; and (4) Third-Party Defendant Peter Sinatra ("Sinatra")—$500,000. The Agreements also provided that all of the guarantors were jointly-and-severally liable for any default of the Agreement. Plaintiff maintains that it would not have agreed to the additional $10 million unconditional guarantee to Wachovia if not for the Agreements with Defendants.

SJH defaulted on the Wachovia loan. Wachovia sought payment from Plaintiff under the terms of the unconditional guarantee, and Plaintiff satisfied that demand. In turn, Plaintiff demanded reimbursement from Defendants under the terms of the Agreements. Plaintiff alleges that Defendants have failed to remit payment in violation of the Agreements, and it filed this diversity action to recoup said obligations.

Defendants Debbas and Griffiths have moved for dismissal on the basis of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Defendant Campbell filed a similar motion and has also requested that the Court transfer the case.

## III. LEGAL STANDARD

The plaintiff has the burden of proving the Court's personal jurisdiction over a defendant. *Theunissen v Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When, as in the present case, the court does not hold an evidentiary hearing in deciding a Rule 12(b)(2) motion, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff[.]" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). "In sharp contrast to summary judgment procedure . . . the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal. *Theunissen*, 935 F.2d at 1458.

The plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe*, 89 F.3d at 1262. "The burden upon a plaintiff to respond to a 'properly supported' motion to dismiss is not particularly demanding." *Turi v. Main St. Adoption Servs., LLP*, No. 08-14511, 2009 WL 2923248, at *7 (E.D. Mich. Sept. 9, 2009)

## IV. ANALYSIS

### A. Personal Jurisdiction

The Due Process Clause protects an individual from "not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citing *Int'l Shoe Corp. v. Washington*, 326 U.S. 310, 319 (1945)). This allows "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Therefore, in a case dependant on diversity of citizenship, the Court's exercise of jurisdiction "must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the

Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

### 1. Michigan Long-Arm Statute

Under Fed. R. Civ. P. 4(e), the Court must look to the Michigan long-arm statute, Mich. Comp. Laws § 600.705, to determine whether personal jurisdiction exists in the case at bar.[4] Mich. Comp. Laws § 600.705 provides, in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the State shall constitute a sufficient basis of jurisdiction to enable a Court of record of this State to exercise limited personal jurisdiction over the individual and to enable the Court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.

In *Sifers v. Horn*, 385 Mich. 195 (1971), the Michigan Supreme Court stated that the phrase "transaction of any business within the State" found in Mich. Comp. Laws § 600.705 "means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest'" contact. *Id.* at 199 n.2. *See also Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 905–06 (6th Cir. 1988).

The Agreements meet this broad standard. Furthermore, "[t]he Michigan statute confers on the state courts the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir. 1981). Therefore, the Court finds that the Michigan long-arm statute is satisfied so long as its exercise of jurisdiction would not offend due process.

---

[4]There is no argument that any of the Defendants would be subject to general personal jurisdiction under Mich. Comp. Laws § 600.701.

6

## 2. Due Process

"[C]onstitutional concerns of due process limit the application of [the Michigan long-arm statute]." *Theunissen*, 935 F.2d at 1459 (citation omitted). A defect in the Due Process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Id.* The relevant criteria for Due Process considerations (the *Mohasco* requirements) are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990)) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). The Court will address each criterion separately.

### a. Purposeful Availment

"Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the unilateral activity of another party or a third person[.]" *Burger King*, 471 U.S. at 475 (quotations and citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from the actions by the defendant himself that create a 'substantial connection' with the forum state." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 982 (6th Cir. 1992) (citing *Burger King*, 471 U.S. at 475).

Defendants Debbas, Griffiths, and Campbell (hereinafter "Defendants") argue that any contacts with the State of Michigan were unintended and fortuitous. They contend that they were

unaware that Plaintiff's principal place of business was in Michigan, and they knew only that Plaintiff was a Nevada-incorporated entity. Defendants maintain that (1) they never visited Michigan in regard to this transaction; (2) the majority of the negotiations were through Sinatra, and to a lesser extent, Seligman, both of whom were located in California at the time; and (3) the transaction was negotiated entirely by conference calls and e-mail.

Defendants further cite to the Agreements, which list Plaintiff only as a Nevada limited-liability company. In addition, each Defendant has attached an affidavit indicating his lack of contacts, or lack of knowledge thereof, with the State of Michigan. Finally, Defendants argue that they were never aware that the Agreements were fully executed, as they did not receive a copy signed by all signatories.

Plaintiff responds that the Court clearly enjoys jurisdiction because Defendants executed—and in Plaintiff's view, initiated—a multi-million-dollar guarantee agreement with a Michigan-based company. Plaintiff suggests that throughout the course of dealings, Defendants became aware, or should have known, where Plaintiff's place of business was located. Plaintiff urges the Court not to consider only the Agreement, but rather to consider the two-year history of the parties, especially those events in the several months leading up to the execution of the Agreements. In support, Plaintiff attaches voluminous emails exchanged between the actors. Plaintiff also attaches declarations of Sinatra and of its—and Presidential's—general counsel, Stephanie Zimmerman, detailing Defendants' contacts in Michigan. Finally, Plaintiff notes that the Agreements contain a Michigan choice-of-law clause.

Certain facts are not in dispute. The Defendants were not physically present in Michigan at any time. Defendants did not execute the Agreements in Michigan. The negotiations were

conducted by telephone and email. The Agreement does not indicate the location of Plaintiff's principal place of business; it states only that Plaintiff is a Nevada LLC. The only signatory listed on the Agreement on Plaintiff's behalf was Sinatra, a California resident.

It is equally clear that the July 2008 negotiations and conference call were not the isolated events portrayed by Defendants. The arrangement between the parties was a complex investment scheme involving Presidential (*i.e.*, Plaintiff's parent corporation) and Sentient. Two new entities, Plaintiff and SJH, were created to obtain the loan. A letter of credit from Comerica Bank, located in Michigan, was required on Plaintiff's behalf to complete the transaction. Aside from Zimmerman, at least one other Michigan attorney was involved in the transaction.

"If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters . . . then the defendant has purposefully availed himself of the forum by creating a continuing obligation to [the forum state]." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998); *see also Air Prods. & Controls, Inc. v. Safetech Inter., Inc.*, 503 F.3d 544 (6th Cir. 2007). In *Lanier*, however, the Sixth Circuit noted that the United States Supreme Court has "stopped short of allowing jurisdiction whenever an out-of-state defendant contracts with a forum resident." 843 F.2d at 911. *See also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) ("The mere fact that Paragon entered into a contract with a Michigan corporation does not mean that Paragon purposefully availed itself of the 'benefits and protections.'"). Instead, *Lanier* requires that "prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing need be addressed to evaluate in a 'highly realistic' way, the intended future consequences that are 'the real object of the business transaction.'" 843 F.2d at 915.

The course of dealings in the instant case is revealing. Presidential and CD Ventures were

9

each investors in Sentient, and they jointly agreed to increase their investment in that entity between January and May of 2008. After the Wachovia loan was approved, the loan amount was immediately increased, which required additional guarantees by Plaintiff to Wachovia, and which in turn necessitated the Agreements between Defendants and Plaintiff.

These factors clearly suggest an on-going relationship between Defendants and a company doing business in Michigan. Of note, this court has found that a "decision to extend the terms of the original Agreement can be seen to reflect an intent to pursue an ongoing relationship, and perhaps to expand it further in the future." *See Terry Barr Sales, L.L.C. v. Amtek Metal Indus., Inc.*, No. 08-10749, 2008 WL 4449633, at *7 (E.D. Mich. Oct. 2, 2008). The conduct at issue in this case is likewise the result of an ongoing relationship between the parties, and those associated with them, in which the parties continued to extend themselves both temporally and financially. Had Sentient not become insolvent, such relationship likely would have continued. Put differently, this was not a "one-time shot", but rather one of a series of deliberate events.

The parties also disagree over which side initiated the contractual negotiations. Debbas and Griffiths represent that the Agreements were essentially thrust upon them by the other investors, and they were advised that the Agreements were procedural only and would never be enforced. Conversely, Plaintiff paints Debbas and Griffiths as the architects of the entire transaction.

This argument is immaterial. "[T]he question of which party solicited the business interface is irrelevant, so long as the defendant then directed its activities to the forum resident." *Lanier*, 843 F.2d at 910. Even if Plaintiff initiated the negotiations, "the fact that the Michigan plaintiffs initiated the contact does not render personal jurisdiction inappropriate, especially where the defendants responded and developed a legal relationship with Michigan residents." *Turi*, 2009 WL

10

2923248, at *7.

Furthermore, the Court is required to draw all factual inferences in Plaintiff's favor, and doing so suggests that it was Defendants who initiated the transaction as a whole by arranging the Wachovia line of financing. The Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulations and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Heath Ass'n v. Virginia*, 339 U.S. 643 (1950)). Thus, this case is distinguishable from those cases finding a lack of jurisdiction when it is the plaintiff who initiates a transaction with a non-resident. *See Kerry Steel*, 106 F.3d at 151; *LAK, Inc.*, 885 F.2d at 1300. That is, viewing the facts in Plaintiff's favor, Defendants sought out a company that was domiciled in Michigan, rather than the other way around.

Finally, the Court is not persuaded by the arguments that Defendants, who are sophisticated businessmen, were completely unaware of the forum in which Plaintiff—and Presidential—conduct business. The Court recognizes that email addresses do not necessarily reveal the location of the recipient. Plaintiff, however, alleges that many negotiations regarding the transactions were conducted by conference call, which would reveal the location of the recipient. Further, the SJH Operating Agreement lists the Southfield, Michigan, address in Plaintiff's membership roster entry. *See* Pl.'s Ex. J. Finally, while the Agreements do not list the Michigan address, they did contain a Michigan choice-of-law clause—which should have raised questions if the arrangement had no ties whatsoever to Michigan. For these reasons, the Court finds that this case is one in which the Defendants, "through [their] negotiation of the contract . . . bound [themselves] to pay money to an entity that [they] should have known was operating in Michigan." *Salom Enters., LLC v. TS Trim*

*Indus., Inc.*, 464 F. Supp. 2d 676, 685 (E.D. Mich. 2006).

The Court recognizes that the advent of smartphones, email, and other similar technologies has blurred the lines of when and where business is transacted and has lessened the need for one to be physically present in order to conduct business in a given forum. Considering the legal principals that this Court is compelled to follow, the Court finds that Plaintiff has met its minimal burden of proving a prima facie case of purposeful availment.

### b. Action Arising From Activities in Forum State

The second *Monasco* factor requires that Plaintiff's cause of action arises from Defendant's activities in Michigan.

Defendants argue that the cause of action arose in Pennsylvania, because that is where any alleged breach of the contract occurred due to Defendant's failure to remit the allegedly-owed funds. *See Kerry Steel*, 106 F.3d at 153. The Sixth Circuit has held, however, in cases involving a contract with a nonresident, "if the cause of action is for breach of that contract, as it is here, the cause of action naturally arises from the defendant's activities in [the forum state]. *Cole*, 133 F.3d at 436. *See also Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1138 (6th Cir. 1982) ("The second aspect of the test obviously is satisfied. The guaranty agreements are the basis for the action.").

The Court agrees, and finds that this cause of action arises from Defendant's actions in the forum state.

### c. Reasonableness

Finally, the third *Monasco* factor requires that the acts of Defendants and the consequences of their acts have a substantial enough connection with Michigan to make the exercise of jurisdiction over them reasonable. If the first two factors are met, jurisdiction is "presumed" to be reasonable.

*Cole*, 133 F.3d at 436.

As discussed above, construing all facts in Plaintiff's favor, Defendants and Presidential, Plaintiff's principal, engaged in a several-month increase of investment capital in Sentient, which ultimately resulted in Defendants seeking the Wachovia line of credit. Further, as discussed above, sophisticated businessmen such as Defendants should have known the location of the company with which they were dealing. While the moving Defendants are from Pennsylvania, this case also includes parties from Michigan, Ohio, and California. Finally, the State of Michigan has a "manifest interest in providing effective means of redress for its residents[.]" *McGee*, 355 U.S. at 224.

Accordingly, the Court finds that the presumption of reasonableness applies. The Court concludes that Defendants are subject to personal jurisdiction in Michigan, and such jurisdiction does not offend due process.

## B. Campbell's Motion to Transfer

In his motion to dismiss, Defendant Campbell alternatively moves for dismissal based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or for a transfer of the case against him to the United States District Court for the Eastern District of Pennsylvania.

### i. Improper Venue

Campbell first claims that the Eastern District of Pennsylvania is the proper venue for this case. The federal venue statute provides that:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> > (1) a judicial district where any defendant resides, if all defendants reside in the same state,
> >
> > (2) a judicial district in which a substantial part of the events

> or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated,
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Subsection (1) is inapplicable because Defendant Pinkas does not reside in the same state as the other Defendants. Subsection (3) applies only when the preceding two subsections do not.

Under § 1391(a)(2), the Eastern District of Pennsylvania most likely would be a proper venue for this action. It is well-settled, however, that there can be more than one proper venue for an action. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Campbell offers no argument why venue is not proper in this district; therefore, the Court has no basis on which to conclude that the current venue is improper.

### ii. Transfer

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court has broad discretion to grant or deny a transfer, and a denial is reviewed only for an abuse of discretion. *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

The following factors are to be considered in determining whether transfer is appropriate:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991). *See also*

*LaFrance v. Grand River Nav. Co., Inc.*, No. 08-13411, 2008 WL 5413078, at *3 (E.D. Mich. Dec. 29, 2008).

Campbell's motion does not analyze the above factors; rather, it merely argues that the case be transferred on the basis of convenience. Such an argument fails to consider the required factors. It also ignores the deference that the Court must give to Plaintiff's choice of forum, which choice will not be disturbed "unless the balance is strongly in favor of the defendant." *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989) (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Considering that the Court is unable to complete the required analysis, the request for transfer is denied.

## V. CONCLUSION

Accordingly, and for the reasons stated, IT IS HEREBY ORDERED that Defendants Debbas and Griffiths' motion to dismiss [dkt 18] is DENIED and Defendant Campbell's motion to dismiss [dkt 23] is DENIED.

IT IS SO ORDERED.

> S/Lawrence P. Zatkoff
> LAWRENCE P. ZATKOFF
> UNITED STATES DISTRICT JUDGE

Dated: March 31, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 31, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290