UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESIDENTIAL FACILITY, LLC,

    Plaintiff/Counter-Defendant,

                                                           Case No. 09-12346
v.                                                Hon. Lawrence P. Zatkoff

CHRISTOPHER J. DEBBAS and
JAMES R. GRIFFITHS,

    Defendants,

and

GREGORY S. CAMPBELL and
ROBERT PINKAS,

    Defendants/Counter-Plaintiffs/Third-Party Plaintiffs,

v.

STERLING BANCORP, INC., PETER SINATRA,
SCOTT SELIGMAN, CAPITAL INVESTMENTS VII,

    Third-Party Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 8, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on several motions. The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore,

pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, (1) Pinkas's motion to amend or correct [dkt 40] is GRANTED; (2) Brantley Partners V's motion to intervene [dkt 37] is DENIED; (3) Plaintiff's motion to dismiss Pinkas's counterclaim [dkt 34] is GRANTED; and (4) the Third-Party Defendants' motion to compel arbitration or dismiss the third-party complaint [dkt 28] is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

The factual background of this matter was adequately discussed in the Court's March 31, 2010, opinion and order and need not be fully restated. Briefly, this lawsuit involves a complex series of financial transactions that ultimately secured a loan made by Wachovia Bank to an entity known as SJH Capital Partners, LLC ("SJH").

In order to facilitate the Wachovia loan, Plaintiff unconditionally guaranteed Wachovia payment of $13,000,000 in the event of SJH's default. Plaintiff's guarantee was based on a separate guaranty agreement (the Agreement) with Defendants and Peter Sinatra ("Sinatra"), who collectively guaranteed to Plaintiff reimbursement of $10,000,000. When SJH defaulted on the Wachovia loan, Plaintiff satisfied its obligation to Wachovia through a letter of credit. Plaintiff then filed this lawsuit seeking reimbursement from Defendants based on the Agreement.

This opinion and order involves only Defendant Robert Pinkas ("Pinkas"). Plaintiff alleges that Pinkas failed to honor his $5,000,000 commitment under the Agreement. When Pinkas filed his answer to the complaint, he also filed a counterclaim against Plaintiff and a third-party complaint against Sterling Bancorp., Inc ("Sterling"), Capital Investments VII ("Capital"), Scott Seligman ("Seligman"), and Sinatra (collectively, the "Third-Party Defendants"). In these filings, Pinkas

purported to sue in his individual capacity and on behalf of Brantley Partners V, L.P. ("Brantley"), which entity is not a party to the Agreement or to this lawsuit.

Sterling is a Michigan corporation that owns and operates Sterling Bank & Trust, F.S.B, and Brantley is an investor in Sterling. Capital is a Michigan limited-liability company and is a limited partner in Brantley. Seligman is the majority owner and controller of Sterling, Capital, and Presidential, LLC. Plaintiff is an entity that was created by the principals of Presidential, LLC (*i.e.*, Seligman and others) specifically to participate in SJH and facilitate the Wachovia loan. Sinatra is a co-guarantor under the Agreement, but Plaintiff did not name Sinatra as a party-defendant.

Pinkas's filings allege the following: (1) Pinkas executed the Agreement on behalf of Brantley; (2) Plaintiff and Seligman represented that Defendants, including Pinkas/Brantley, would receive warrants to acquire stock in Sentient Jet Holdings, LLC[1], in exchange for executing the Agreement, which warrants were never delivered; (3) Seligman induced Pinkas/Brantley to invest approximately $10,500,000 in Sterling, and misrepresented that Sterling was in sound financial condition, when in fact Sterling was in financial disarray and was subsequently issued a cease-and-desist letter by the Office of Thrift Supervision; (4) Capital entered an agreement to invest in Brantley and breached that subscription agreement; and (5) Sinatra is a co-guarantor required to reimburse Plaintiff, and if he did not execute the Agreement, Seligman and Sinatra fraudulently represented to Defendants that he did.

Following the filing of Pinkas's counterclaim and third-party complaint, the Third-Party Defendants filed a motion to compel arbitration or to dismiss. Plaintiff likewise filed a motion to

---

[1]SJH was formed for the sole purpose of facilitating the Wachovia loan for use in the operations of Sentient Jet Holdings.

dismiss the counterclaim. Brantley filed a motion to intervene. Finally, Pinkas filed a motion to amend or correct his filings.

### III.  ANALYSIS

**A.  Brantley Partners V's Motion to Intervene**

Brantley has filed a motion to intervene in this lawsuit. This motion is premised on Brantley's and Pinkas's argument that Pinkas executed the Agreement on Brantley's behalf, and it was filed in response to arguments that Pinkas improperly asserted claims on behalf of Brantley, who is not a party to this action.

Fed. R. Civ. P. 24 governs motions to intervene, and it presribes both a mandatory and a permissive right to intervene. A court must permit a party to intervene where that party:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Sixth Circuit has established the following four factors to determine whether an intervening party must be allowed to intervene:

> (1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.

*Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (1997) (citing *Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 395 (6th Cir. 1993)).

In addition, even if intervention is not mandatory, Rule 24 allows for permissive intervention

if the proposed intervening party:

> (a) is given a conditional right to intervene by a federal statute; or
>
> (b) has a claim or defense that share with the main action a common question of law or fact

Fed. R. Civ. P. 24(b)(1). When exercising its discretion under this section, the Court must consider whether permitting intervention would cause undue delay or would prejudice the rights of the current parties. *See* Fed. R. Civ. P. 24(c).

Brantley contends that it should be allowed to intervene as of right because Pinkas executed the Agreement on its behalf, and it would be obligated to indemnify Pinkas if he is found to be liable. Defendants generally attack the substance of Brantley's proposed complaint rather than the intervention factors, essentially arguing that it would be futile to allow Brantley to intervene because it cannot state any viable claims.

The Court finds no justification for allowing Brantley to intervene as of right, because the Court can discern no legal interest, much less a substantial one, that Brantley holds in this litigation. There is no indication on the face of the Agreement that Pinkas signed in a representative capacity, or in any capacity other than as an individual. All references to Pinkas in the Agreement are devoid of any mention of Brantley or any position or title held by Pinkas in that entity. To the extent that Brantley has a legal interest in these proceedings, it has not explained how Pinkas is unable to adequately represent that interest, or how its ability to protect its interest would be impaired.

The Court also finds that permissive intervention is inappropriate because Brantley has no statutory right to intervene, nor could it have a claim or defense regarding a contract to which it is not a party.

Therefore, the Court will deny Brantley's motion to intervene.

**B. Pinkas's Motion to Amend or Correct**

After Plaintiff and the Third-Party Defendants moved to dismiss Pinkas's counter- and third-party complaints, Pinkas moved to amend or correct those pleadings.

Fed. R. Civ. P. 15(a)(2) allows for amended pleadings, "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Among the Court's considerations in so deciding are "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). A court's decision denying leave to amend is generally reviewed under the abuse-of-discretion standard. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). If, however, the court denies the amendment on the grounds of futility, the decision is reviewed *de novo*. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986). A motion to amend may be denied for futility if "the court concludes that the pleading as amended could not withstand a motion to dismiss." *Id*.

The amended pleadings were filed in response to the motions to dismiss. The responses in opposition to the proposed amendments are based generally on grounds of futility (*i.e.*, the amended pleadings fail to satisfy the Rule 12(b)(6) pleading standard). Therefore, the Court will grant Pinkas's motion to amend his pleadings, and it will incorporate the amended counter-complaint and amended third-party complaint, and Plaintiff's and the Third-Party Defendants' objections thereto, when deciding the pending motions to dismiss.

**C. Motions to Dismiss**

    **1. Legal Standard**

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Thus, a plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions . . . .'").

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

**2. Third-Party Defendants' Motion to Compel Arbitration or Dismiss**

 **a. Count I**[2]

---

[2]The Court notes that Count I of the third-party complaint likely also violates Fed R. Civ. P. 14(a), because the Third-Party Defendants' liability on this count is not derivative of Pinkas's liability. *See* Fed. R. Civ. P. 14(a); *see also* Part III.C.2.b, *infra.* Rather, Pinkas is asserting an affirmative defense to the complaint (*i.e.*, that the Agreement is invalid). Therefore, this claim would more properly have been brought by joining the appropriate Third-Party Defendants to

Count I of the amended third-party complaint alleges that Seligman and Sinatra represented to Pinkas (and Brantley), that in exchange for the Agreement, Brantley would receive warrants issued by Sentient Jet Holdings for stock. Pinkas contends that (1) the warrants were never received; (2) that Seligman and Sinatra never intended to convey the warrants; and (3) the promises were made only to induce the execution of the Agreement.

The Third-Party Defendants argue that Count I of the third-party complaint must be dismissed because the alleged promises to convey warrants were not part of the Agreement, and the Agreement contained the following integration and merger clause:

> 10. Governing Law; Binding Nature. This Guaranty shall be construed and enforced in accordance with the laws of the State of Michigan. All the terms of the guaranty shall inure to the benefit of and be enforceable by an holder or holders of this Guaranty. This Guaranty embodies the entire agreement and understanding between Presidential and thee Guarantors and supersedes all prior agreements and understandings relating to the subject matter hereof. The headings in this Guaranty are for convenience of reference only, and shall not limit or otherwise affect the meaning hereof.

Based on this clause, the Third-Party Defendants contend that Pinkas cannot sustain a claim based on parol evidence.

Although parol evidence is "generally admissible" to prove fraud, "in contracts which include an integration or merger clause, parol evidence is admissible only if it relates to representations of fact made by one party to induce another to enter into the agreement." *Binder v. Med. Shoppe Int'l*, No. 09-14046, 2010 WL 2854308, at *7 (E.D. Mich. July 20, 2010) (citing *Star Ins. Co. v. United Commercial Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 928–29 (E.D. Mich. 2005)).

---

Pinkas's counterclaim. *See* Fed. R. Civ. P. 13(h). However, because the Third-Party Defendants have not objected to this procedure, the Court will entertain the merits of the claim.

8

"The key question regarding contracts that contain a merger clause is whether one party justifiably relied on the representations of the other where the written agreement not only failed to include those representations, but clearly stated that by signing the contract the parties were agreeing that the written document made up their entire agreement." *LIAC, Inc. v. Founders Ins. Co.*, 222 Fed. Appx. 488, 493 (6th Cir. 2007) (citing *Star Ins. Co.*, 392 F. Supp. 2d at 929–30).

Here, the integration and merger clause states clearly that it "embodies the entire agreement and understanding between Presidential and the Guarantors and supersedes all prior agreements and understandings relating to the subject matter hereof." Pl.'s Compl. Ex. B., p. 4. The Court finds this clause clear and unambiguous.

Where "a contract contains a valid merger clause, the only fraud that can invalidate the contract is where one party induces the other to suppose that the antecedent agreement is included in the writing, or where one party induces the other to forget that agreement and to execute an incomplete writing, while describing it as complete." *Plainfield Specialty Holdings II Inc. v. Children's Legal Servs., PLLC*, 634 F. Supp. 2d 833, 843 (E.D. Mich. 2009) (quoting *Fleet Bus. Credit v. Krapohl Ford Lincoln Mercury Co.*, No. 249825, 2004 WL 2179235, at *2 (Mich. Ct. App. Sept. 8, 2004)) (internal quotation marks omitted). "In Michigan, 'fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon.'" *Binder*, 2010 WL 2845308, at *7 (quoting *Samuel D. Begola Servs. v. Wild Bros.*, 210 Mich. App. 636, 639 (1995)).

Michigan courts have held that a valid integration or merger clause "may render the plaintiff's reliance on oral representations unreasonable." *Doty v. Cleannet of Greater Mich., Inc.*, No. 238717, 2003 WL 22956401, at *3 (Mich. Ct. App. Dec. 16, 2003); *see also Hamade v. Sunoco,*

9

*Inc. (R & M)*, 271 Mich. App. 145, 171 (2006) ("Likewise, the valid integration clause renders reliance on the representation unreasonable as a matter of law."); *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 504 (1998) ("Here, the merger clause made it unreasonable for plaintiff's agent to rely on any representations not included in the letter of agreement.").

In the Agreement, the "consideration clause" states that "Each Guarantor acknowledges and agrees that he is materially benefitted by Bank's acceptance of the Unconditional Guaranty." Pl.'s Compl. Ex. B., p. 1. This section of the Agreement specifically recites the consideration, and it contains no mention of stock warrants. *See Doty*, 2003 WL 22956401, at *3 (finding that "the franchise agreements contain clauses that address the particular statements allegedly made to induce plaintiffs to sign the agreements . . . ."); *see also Safety Socket, LLC v. All State Fastener*, No. 07-DV-15364, 2009 WL 1508377, at *12 (E.D. Mich. May 29, 2009) ("[T]he Court finds that no genuine issues of material fact exist as to whether Plaintiff was fraudulently induced into entering a contract with Defendant, because Plaintiff's claims are contradicted through the various provisions of the Terms and Conditions Agreement.").

In addition, the "common indicia" of fraudulent inducement are noticeably absent here. *See LIAC, Inc.*, 222 Fed. Appx. at 494 (citing one-sidedness, a familial relationship, and manipulation based on age or health conditions as indicative of fraudulent inducement). For example, in *Tocco v. Tocco*, 409 F. Supp. 2d 816 (E.D. Mich. 2005), the court held that an uncounseled, elderly grandfather's allegations of fraudulent inducement invalidated a merger clause. *Id*. at 828.

Instead, the parties here are sophisticated businessmen engaging in highly complex financial arrangements. *See Safety Socket*, 2009 WL 1508377, at *13 (noting that plaintiff was "represented by sophisticated business people through this transaction"); *Plainfield*, 634 F. Supp. 2d at 845

(finding merger clause valid where the executors were "sophisticated parties who are presumed to have fully understood the consequences" of the provisions). If Pinkas expected that a conveyance of warranties was to be part of the bargain, he should have demanded the inclusion of such terms in the Agreement. *See, e.g.*, *LIAC, Inc.*, 222 Fed. Appx. at 494 ("As the party concerned about Founders's future performance, LIAC was best suited to demand that the MGA agreement include explicit provisions reiterating all of the oral representations that Founders allegedly made."); *Safety Socket*, 2009 WL 1508377, at *13 ("If Plaintiff wanted to rely on any representation regarding exclusivity, then it should have addressed its concern before signing an agreement, which contained a broad merger clause and a clause disclaiming any and all volume projections.").

Thus, the merger and integration clause is valid, and it encompasses any representations made by Plaintiff regarding additional consideration to the agreement that was not included in the terms of the contract. Moreover, the merger clause explicitly renounces any prior agreements or understandings. Any reliance on prior oral agreements was therefore unreasonable as a matter of law, and the merger clause bars parol evidence of any additional promises or representations made by Plaintiff prior to Pinkas's execution of the Agreement.

Therefore, Count I of Pinkas's amended third-party complaint fails to state a claim.

### b. Counts II and III

The Third-Party Defendants next argue that Pinkas has improperly joined his third-party claims, citing Rules 19, 20, and 21 of the Federal Rules of Civil Procedure. The Court, however, finds that Fed. R. Civ. P. 14 should have instead been invoked, which states in pertinent part: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it*." Fed. R. Civ. P. 14(a) (emphasis added).

11

The Sixth Circuit has discussed the application of the Rule thusly:

> Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded . . . . Rule 14(a) does not allow a third-party complaint to be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim, because a third-party complaint must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant.

*Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). Simply put, a third-party plaintiff cannot assert new claims in a third-party complaint; it can only seek a determination of liability on the original claim. *See id*. ("The third party complaint is in the nature of an indemnity or contribution claim."); *see also* 6 Wright, Miller, & Kane, Federal Practice and Procedure, § 1446 pp. 431–32 (2010) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.").

Count II of Pinkas's amended third-party complaint alleges that Seligman fraudulently induced Pinkas and Brantley to invest $10,500,000 in Sterling, in exchange for Seligman's and Capital's return investment in Brantley. Pinkas alleges that Seligman and Capital never intended to invest in Brantley, and that those representations were made to fraudulently induce Pinkas's and Brantley's investment in Sterling. Pinkas further avers that Seligman, Capital, and Sterling misrepresented Sterling's financial health during the negotiations. Count III of Pinkas's amended third-party complaint alleges that Capital breached a subscription agreement to invest in Brantley.

Counts II and III address claims independent of Plaintiff's allegations against Pinkas. That

is, if Pinkas is found liable to Plaintiff for breach of the Agreement, success on Counts II and III of the amended third-party complaint would in no way shift that liability to Seligman, Capital, or Sterling. Although these claims generally involve the same parties and transactions, Counts II and III are not the proper subject of a third-party complaint and must therefore be dismissed.

### c. Count IV

The Third-Party Defendants seek the dismissal of Count IV of Pinkas's third-party complaint, which they construe as Pinkas's demand that Plaintiff collect co-guarantor Sinatra's guaranteed contribution amount of $500,000. The Third-Party Defendants argue that any right to proceed against Sinatra, who has not been named as a party-defendant, belongs to Plaintiff only.

In response, Pinkas represents that Count IV is merely a contribution claim against Sinatra based on the Agreement's joint-and-several liability provision. Pinkas maintains that, because Plaintiff is not proceeding against Sinatra, Pinkas may be required to pay more than his *pro rata* share if another co-guarantor is unable to meet his obligations. To combat this, the Third-Party Defendants state in their reply brief that "Presidential has waived ANY liability other Guarantors could have to cover for Sinatra."

Even though the Third-Party Defendants are associated with Plaintiff, the Court cannot accept their recitation of Plaintiff's position regarding Sinatra as binding on Plaintiff. Plaintiff is obviously not seeking to judicially enforce the Agreement against Sinatra because it did not name Sinatra as a party-defendant. The record, however, does not indicate that Plaintiff has affirmatively waived its right to collect Sinatra's *pro rata* share of a co-guarantor's inability to pay.

The parties may submit a stipulated order to the Court for review if Plaintiff wishes to waive its right to collect Sinatra's *pro rata* shares in the case of non-payment by any guarantor. On the

current record, however, the Court finds that the Agreement anticipates a right of contribution, and a contribution action is properly brought on a third-party complaint pursuant to Fed. R. Civ. P. 14(a).

The Court will thus deny the motion to dismiss on this count.

### 3. Plaintiff's Motion to Dismiss Counterclaim

Pinkas's counterclaim against Plaintiff mirrors that of his third-party claims against Seligman and Sinatra (*i.e.*, Plaintiff fraudulently induced the execution of the Agreement by promising the conveyance of warrants). For the reasons set forth in Part III.C.2.b, *supra*, the Court dismisses Pinkas's counterclaim in its entirety because he cannot state a claim of fraud in the inducement.

## IV. CONCLUSION

Accordingly, and for the reasons stated above, IT IS HEREBY ORDERED that:

(1) Pinkas's motion to amend or correct [dkt 40] is GRANTED;

(2) Brantley Partners V's motion to intervene [dkt 37] is DENIED;

(3) Plaintiff's motion to dismiss Pinkas's counterclaim [dkt 34] is GRANTED and Pinkas's counterclaim is dismissed with prejudice; and

(4) The Third-Party Defendants' motion to compel arbitration or dismiss the third-party complaint [dkt 28] is GRANTED IN PART and DENIED IN PART. Count I of Pinkas's Third-Party Complaint is dismissed with prejudice, and Counts II and III are dismissed without prejudice.

IT IS SO ORDERED.

                                              S/Lawrence P. Zatkoff
                                              LAWRENCE P. ZATKOFF
                                              UNITED STATES DISTRICT JUDGE

Dated: September 8, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 8, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290