UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESIDENTIAL FACILITY, LLC,

    Plaintiff,

v.

    Case No. 09-12346
    Hon. Lawrence P. Zatkoff

CHRISTOPHER J. DEBBAS and
JAMES R. GRIFFITHS,

    Defendants,

and

GREGORY S. CAMPBELL and
ROBERT PINKAS,

    Defendants/Third-Party Plaintiffs,

v.

PETER SINATRA, EMERALD PARTNERS V, LP,
and JETDIRECT AVIATION HOLDINGS, LLC,

    Third-Party Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 24, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's renewed motion for summary judgment [dkt 101], Plaintiff's motion for summary judgment [dkt 69], and Defendants Christopher Debbas and James Griffiths' motion for leave to file cross-motion for summary judgment [dkt 125]. The

motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without oral argument. For the following reasons, Plaintiff's motions for summary judgment are GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART, and Defendants Christopher Debbas and James Griffiths' motion for leave to file cross-motion for summary judgment is DENIED.

## II. BACKGROUND

As stated in the Court's March 31, 2010, opinion and order [dkt 48], this lawsuit involves several financial transactions that ultimately secured a loan made by Wachovia Bank ("Wachovia") to an entity known as SJH Capital Partners, LLC ("SJH"). In order to obtain the Wachovia loan, Plaintiff unconditionally guaranteed Wachovia payment of $13,000,000 in the event of SJH's default. Plaintiff's guarantee was based on a separate guaranty agreement (the "Guaranty") between it and five others: Defendants Christopher Debbas and James Griffiths ("Debbas" and "Griffiths", respectively), Defendants/Third-Party Plaintiffs Gregory Campbell and Robert Pinkas ("Campbell" and "Pinkas", respectively), and Third-Party Defendant Peter Sinatra ("Sinatra") (collectively, "the Co-guarantors").

The Co-guarantors guaranteed to reimburse Plaintiff $10,000,000 if Wachovia acted on the guaranty agreement between Plaintiff and Wachovia. When SJH defaulted on the Wachovia loan, Wachovia requested that Plaintiff satisfy its obligation to Wachovia through a letter of credit from Comerica Bank. According to Plaintiff, it complied. Plaintiff then filed this lawsuit seeking reimbursement from Debbas, Griffiths, Campbell, and Pinkas ("Defendants") based on the Guaranty.

Sinatra was not named as one of the original defendants when Plaintiff filed its complaint. Sinatra, however, purportedly signed the Guaranty.

Procedurally, Plaintiff moved for summary judgment against the Defendants on October 29, 2010. On January 8, 2011, in a written opinion, the Court continued Plaintiff's motion for summary judgment based upon two affidavits submitted by Defendants pursuant to Rule 56(d). The Court granted Defendants' requests to discover whether Sinatra had executed the Guaranty. After the Court's opinion and order, Sinatra testified at a deposition that he executed the Guaranty in or about July of 2008. Plaintiff then filed the instant motion, renewing its previous continued motion for summary judgment. Plaintiff requests that the Court grant its motions for summary judgment and that the Court enter a final judgment against Defendants. On June 10, 2011, Debbas and Griffiths filed a motion, seeking to have the Court modify its Scheduling Order and allow Debbas and Griffiths to file a cross-motion for summary judgment.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

In this action, Plaintiff claims that because the Guaranty is a valid contract, the Court should enforce it according to its terms and require Defendants to pay their obligations under the Guaranty. According to Plaintiff, Sinatra testified at his deposition that he: (1) signed the Guaranty and sent an electronic copy of the original to the office of Plaintiff's General Counsel, Stephanie Zimmerman ("Zimmerman"); (2) retained the original signature page in his office; and (3) has now produced the

original signature page. Based on Sinatra's testimony, Plaintiff contends that a genuine dispute does not exist as to whether the Co-guarantors signed the Guaranty. Defendants, however, contend that a genuine dispute still exists because: (a) it is unclear when Sinatra signed the Guaranty; (b) it is unclear that the Co-guarantors intended to be bound by the Guaranty if any Co-guarantor (Sinatra) failed to sign the Guaranty; and (c) Plaintiff has not shown it paid the obligation that permits its right to collect against Defendants.

**A. DISPUTE AS TO WHETHER SINATRA SIGNED AGREEMENT**

As explained, *supra*, Plaintiff avers that Sinatra executed the Guaranty in the summer of 2008. Plaintiff supports its assertion by citing to Sinatra's deposition testimony, Zimmerman's deposition testimony, and a signature page of the Guaranty that is purportedly signed by Sinatra. *See* Ex. 4 of Pl.'s Mot. Sum. Jud. With respect to Sinatra, he testified to the following:

> Q. I'll break it down. Did you sign the [Guaranty] on July 21, 2008?
> A. To the best of my knowledge, I signed the [Guaranty], but I'm not sure specifically on that date.
>
> Q. Okay. Do you recall exactly on what date you signed the [Guaranty]?
> A. I signed the [Guaranty] at or around the date of receiving the final draft.
>
> Q. And that would have been in July of 2008?
> A. That is correct.
>
> \* \* \*
>
> Q. And what did you send to your office in Southfield, Michigan?
> A. A signed copy.
>
> Q. Of?
> A. The [Guaranty].
> Q. The entire [Guaranty]?

> A. Of my signature.
> Q. Of just the signature page or the entire guaranty?
> A. Just the signature page.
> * * *
> Q. Did you send a copy of your signature page to Van Winkle?
> A. I sent it to Stephanie [Zimmerman] with a copy for Jeff Van Winkle.

Sinatra Dep. Tr at p. 32–35. With respect to Zimmerman, she testified that she received an electronic copy of Sinatra's signature page around the same time she received such a copy from Defendants, and that she received Sinatra's original signature page in response to discovery in this case. Zimmerman Dep. Tr. at p. 17–19.

In disputing Sinatra's testimony, Defendants cite to a report of Eric Speckin, a expert in handwriting identification and ink-dating. Speckin sampled the ink used to sign Sinatra's signature on the original signature page. The report concludes that the document was signed within 18 months of testing, which occurred in April of 2011. Defendants aver that this questions Sinatra's testimony regarding when he testified that he signed it. In response, Plaintiff argues that Defendants' handwriting expert is not reliable evidence and should be rejected by this Court. Alternatively, Plaintiff argues that the date on which Sinatra signed the Guaranty is irrelevant.

After reviewing the parties' briefs and arguments, the Court finds that Plaintiff has met its burden by producing the original signature page of the Guaranty, containing the purported signature of Sinatra, and Sinatra and Zimmerman's depositions. Sinatra, himself, testified that he signed the Guaranty, which is supported by Zimmerman's testimony. Defendants' set forth insufficient evidence to show Sinatra did not sign the Guaranty. Defendants' ink-dating report is irrelevant as it fails to dispute that Sinatra did not sign the Guaranty. As such no genuine dispute of fact exists with respect to whether all of the Co-Guarantors signed the Guaranty, and Plaintiff is granted

summary judgment on this issue.

### B. DISPUTE AS TO THE PARTIES' INTENT TO BE BOUND

Having granted summary judgment to Plaintiff on whether Sinatra signed the Guaranty, the Court need not analyze the parties' intentions on whether Defendants intended the Guaranty to only be enforceable if each Co-Guarantor signed the Guaranty. *See Wiegand v. Tringali*, 177 N.W.2d 435, 437–38 (Mich. Ct. App. 1970).[1] Plaintiff has produced evidence to show that all of the Co-Guarantors signed the Agreement. As such, the Court finds that whether the Guaranty is enforceable absent the signature of one of the Co-guarantors is no longer relevant or material.

### C. DISPUTE AS TO PLAINTIFF'S PAYMENT TO COMERICA BANK

According to Section 1 of the Agreement, "Each Guarantor agrees to [Plaintiff] the full and prompt payment of each Guarantor's Initial Commitment *when and if* [Plaintiff] makes a Loan Guaranty Commitment Payment." "Loan Guaranty Commitment Payment" is defined as "any Loan Guaranty Commitment paid by [Plaintiff] under the Unconditional Guaranty in excess of $3,000,000." While briefing Plaintiff's motion for summary judgment, Defendants appeared to not

---

[1] As stated in *Wiegand:*

> In cases where a writing which purports to evidence a contract between several named persons has been signed by less than all those named, it is often found that the signers did not intend to become contractually bound until all the apparent parties sign and deliver the writing. This is not, however, immutable doctrine. . . . And those who do sign the writing may have intended to be bound by its terms even though less than all the named persons sign. *Their intention governs. The intention of the parties is a fact to be decided upon the evidence, not by invoking our personal, professional, or judicial experience.*

*Id.* at 437 (emphasis added).

7

dispute that Plaintiff had paid the principal obligation to Comerica Bank,[2] thus activating the Co-guarantors' duties under the Guaranty. However, Defendants' briefing on Plaintiff's renewed motion for summary judgment now disputes whether Plaintiff paid Comerica Bank. Defendants argue that there is no evidence that Plaintiff ever made a payment to Comerica Bank.

Although Defendants fail to provide any evidence that Plaintiff paid Comerica Bank, Plaintiff, as the moving party, bears the burden of proof to establish that no genuine dispute exists as to whether Plaintiff paid the obligation to Comerica Bank. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The Court finds that Plaintiff has failed to produce sufficient evidence that a reasonably jury could conclude that Plaintiff made a Loan Guaranty Commitment Payment. First, according to Plaintiff's principal, Scott Seligman, he testified at a deposition that he understood that the letter of credit was called and that he *authorized* disbursement of the funds on behalf of Plaintiff to Comerica Bank. He, however, was not aware of who paid Comerica Bank $10,000,000 under the letter of credit, and stated that the obligation may have been converted into a loan. Seligman's testimony is not sufficient to establish that Plaintiff paid a Loan Guaranty Commitment Payment in excess of $3,000,000 to Comerica Bank, an element Plaintiff will bear the burden on at trial. *Celotex Corp.*, 477 U.S. at 322.

Second, Plaintiff cites to numerous financial records as documentary proof that it paid the $10,000,000. Yet, the documents fail to indicate that Comerica Bank received payment of $10,000,000 from Plaintiff as Plaintiff argues. Plaintiff's financial documents fail to establish that no genuine dispute exists as to whether Plaintiff paid Comerica Bank an amount in excess of

---

[2]Although Wachovia made the loan to SJH and Presidential guaranteed SJH's obligation to Wachovia, Plaintiff agreed to satisfy its guaranty agreement with Wachovia through a letter of credit from Comerica Bank.

8

$3,000,000, thus triggering Defendants' obligations under the Guaranty. Therefore, the Court denies without prejudice granting summary judgment to Plaintiff on whether it paid its obligation to Comerica Bank. Plaintiff is permitted to file a supplemental motion for summary judgment addressing whether it paid its obligation to Comerica Bank.

**D. CONCLUSION**

The Court finds that no genuine dispute of fact exists with respect to whether all of the Co-Guarantors signed the Guaranty, and Plaintiff is granted summary judgment on this issue. Plaintiff's remaining requested relief is denied without prejudice.

**V. MOTION FOR LEAVE TO FILE CROSS-MOTION FOR SUMMARY JUDGMENT**

**A. BACKGROUND**

Relevant to Debbas and Griffiths' motion, is a short procedural recap of this case. On June 17, 2009, Plaintiff filed its Complaint. The Court adjourned the September 28, 2010, scheduling conference due to the parties' assertions that third-parties would be added. After adding such parties, the Court held a scheduling conference on December 2, 2010, setting discovery to close on May 2, 2011, and the dispositive motion cut-off on May 23, 2011.

Meanwhile, Plaintiff filed its motion for summary judgment on October 29, 2010. Defendants requested the motion be continued to discover whether Sinatra in fact executed the Guaranty. On January 21, 2011, the Court allowed Defendants 60 days to complete discovery on this issue. Seligman and Sinatra were deposed. On March 18, 2011, Debbas and Griffiths served a request for production of documents on Plaintiff. In Request No. 5, they requested "all documents relating to any loans made by Comercia Bank . . . , including records of all loan payments by [Plaintiff] and current loan balance(s)."

9

On March 23, 2011, Plaintiff renewed its October 29, 2010, motion for summary judgment. On April 13, 2011, Debbas and Griffiths filed their response to Plaintiff's motion. On April 19, 2011, Plaintiff responded to Debbas and Griffiths' request for documents, objecting to Request No. 5. On April 22, 2011, Debbas and Griffiths filed a motion to compel the production of documents. That motion was withdrawn on June 3, 2011, and the matter was purportedly resolved due to the absence of documents Debbas and Griffiths were seeking.

Debbas and Griffiths now seek leave to file a cross-motion for summary judgment because they contend that Plaintiff never made a Loan Guaranty Payment, and thus, the condition which obligated Defendants to pay Plaintiff never occurred. They, however, never discovered this evidence until after the May 23, 2011, dispositive motion cut-off date. They seek to have the Court modify its Scheduling Order and allow Debbas and Griffiths to file a cross-motion for summary judgment. In response, Plaintiff contends that Debbas and Griffiths have had ample time to discover such evidence and that this case already has been delayed enough.

## B. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 16(b)(4), a district court may modify a scheduling order *only* upon a showing of "good cause." "Good cause" means that the scheduling order "cannot be met despite a party's diligent efforts." *Amoco Pipeline Co. v. Herman Drainage Sys.*, 212 F. Supp. 2d 710, 730 (W.D. Mich. 2002) (citation omitted).

## C. ANALYSIS

After review of the record and the parties's arguments, the Court finds that Debbas and Griffiths have failed to show "good cause." Contrary to their argument that they were diligent in pursuing the evidence at issue, they did not request the underlying documents from Plaintiff until

10

March 18, 2011, despite the fact that this case was filed on June 17, 2009, and Plaintiff filed its motion for summary judgment on October 29, 2010. The Court even continued Plaintiff's motion for summary judgment based on Defendants' request for an additional sixty days. However, Defendants' request for additional discovery did not include further discovery on whether the purported condition precedent of the Guaranty had been met. Debbas and Griffiths also never requested an extension of the scheduling order prior to the close of discovery—May 2, 2011—which the Court would have entertained. At this juncture of the case, Debbas and Griffiths have not shown "good cause," i.e., that the close of discovery or dispositive motion cut-off date could not have been met despite Debbas and Griffiths efforts. *See Amoco Pipeline Co.*, 212 F. Supp. 2d at 730. As such, the Court denies Debbas and Griffiths' motion for leave to file cross-motion for summary judgment.

## VI. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Plaintiff's renewed motion for summary judgment [dkt 101] and motion for summary judgment [dkt 69] are GRANTED IN PART and DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff is permitted to file a supplemental motion for summary judgment on the issue of whether it paid its obligations to Comerica Bank within 45 days of entry of this order.

IT IS FURTHER ORDERED that Defendants Christopher Debbas and James Griffiths motion for leave to file cross-motion for summary judgment [dkt 125] is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF

11

UNITED STATES DISTRICT JUDGE

Dated: August 24, 2011

CERTIFICATE OF SERVICE

 The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 24, 2011.

             S/Marie E. Verlinde
             Case Manager
             (810) 984-3290