UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESIDENTIAL FACILITY, LLC,

    Plaintiff,

v.

                                       Case No. 09-12346
                                       Hon. Lawrence P. Zatkoff

CHRISTOPHER J. DEBBAS and
JAMES R. GRIFFITHS,

    Defendants,

and

GREGORY S. CAMPBELL and
ROBERT PINKAS,

    Defendants/Third-Party Plaintiffs,

v.

PETER SINATRA, EMERALD PARTNERS V, LP,
and JETDIRECT AVIATION HOLDINGS, LLC,

    Third-Party Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 16, 2012.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on its February 9, 2012, order requesting that Defendants file a response to Plaintiff's response to the Court's previous order to show cause. The Court stated in its February 9, 2012, order that Plaintiff's response contained sufficient evidence to demonstrate to

the Court that Plaintiff had satisfied its obligations under a guaranty agreement ("the Presidential Guaranty") entered into between Plaintiff and Defendants, triggered Defendants' obligations under the Presidential Guaranty, and thus Plaintiff appeared to be entitled to a judgment against Defendants:

> Plaintiff timely submitted a response addressing the Court's order to show cause. The response sets forth in detail as to why Plaintiff continued to submit additional evidence to the Court after the Court addressed Plaintiff's motions for summary judgment. Plaintiff also thoroughly explains why there is no genuine dispute that Plaintiff satisfied its obligations under the guaranty agreement. Plaintiff attached numerous exhibits, including financial records evidencing payment, that support Plaintiff's position.
> In reviewing Plaintiff's response and the attached exhibits, it appears to the Court that Plaintiff satisfied its obligations under the guaranty agreement, thus triggering Defendants' obligations to Plaintiff. Because this is the sole issue that remains in dispute in this case, the Court finds no reason for this case to proceed to a trial on the merits if Plaintiff has produced sufficient evidence to entitle it to a judgment against Defendants. The Court, however, also finds it proper to permit Defendants the opportunity to respond to Plaintiff's response (and attached exhibits) as to whether Plaintiff is entitled to a judgment against Defendants because Plaintiff has shown that it paid its obligation to Wachovia Bank and thus, triggered Defendants' obligations under the guaranty agreement.

February 9, 2012, order [dkt 155].

The Court further provided Defendants an opportunity to respond to the evidence Plaintiff submitted to the Court. Defendant Campbell, Pinkas, Debbas and Griffiths filed response briefs, to which Plaintiff has filed a reply. Based on the Court's review of the facts and legal arguments present in the parties' papers, the Court finds that Plaintiff has satisfied its obligations under the Presidential Guaranty and Plaintiff is entitled to judgment against Defendants.

## II. BACKGROUND

**A. FACTUAL BACKGROUND**

This lawsuit involves several financial transactions that ultimately secured a loan made by

Wachovia Bank ("Wachovia") to an entity known as SJH Capital Partners, LLC ("SJH"). To obtain the Wachovia loan, Plaintiff unconditionally guaranteed Wachovia payment of up to $13,000,000 in the event of SJH's default pursuant to a written and executed guaranty agreement (the "Wachovia Guaranty"). The Wachovia Guaranty provided that in the event SJH defaulted, Plaintiff would pay Wachovia through a letter of credit issued by a bank approved of by Wachovia. In this case, Comerica Bank ("Comerica") acted as the issuing bank. Plaintiff then secured its risk under the Wachovia Guaranty with a separate guaranty agreement (the "Presidential Guaranty") with Defendants Debbas, Griffiths, Campbell, Pinkas, and Third-Party Defendant Sinatra (collectively, "the Co-guarantors"). The Co-guarantors guaranteed to reimburse Plaintiff $10,000,000 if Wachovia acted on the Wachovia Guaranty. When SJH defaulted on the Wachovia loan, Wachovia requested that Plaintiff satisfy its obligation to Wachovia. As provided for in the Wachovia Guaranty, Plaintiff's obligation to Wachovia was satisfied by the letter of credit issued by Comerica. According to Plaintiff, it has satisfied its obligation to Wachovia. Plaintiff then filed this lawsuit seeking reimbursement from Defendants Debbas, Griffiths, Campbell, and Pinkas based on the Presidential Guaranty.

The transaction is explained in detail in the December 27, 2011, Declaration of Caroline Johnson, Chief Financial Officer for KISS Funding Group, LLC ("KISS"):

>  a. Presidential [(Plaintiff)] paid its obligation to Wachovia through Wachovia's drawing on the letter of credit which Presidential authorized to be drawn on in the event of default by SJH Capital on its loan from Wachovia.
> 
>  b. The letter of credit was issued by Comerica. Presidential's affiliate KISS had a $50,000,000 line of credit from Comerica available to secure the issuance of the letter of credit. Scott Seligman, KISS' principal, was a guarantor of the line of credit.

3

    c.      Presidential borrowed funds from KISS to be able to secure the letter of credit. It used these borrowed funds to pay Comerica. Presidential was ultimately unable to repay KISS, and so the loan was converted to a capital investment by KISS in Presidential. That is why Presidential's records show such a reclassification to KISS.

    d.      The reason for the difference between the $13,000,000 which Presidential paid Wachovia and the $12,131,314.18 shown on Presidential's Comerica loan payable sheet is that the Presidential letter of credit that Comerica honored upon demand from Wachovia when SJH Capital defaulted had a default interest rate of 6.25% annually, as well as penalties and fees for the default – $795,0l8 annually without penalties included.

            The KISS line was used to secure the letter of credit, so KISS lent that amount from its line to Presidential to repay Comerica. But until the KISS line was paid down by the amount Comerica paid to Wachovia on Presidential's letter of credit, Comerica charged default rate interest on it as set forth in the letter of credit – 6.25%, versus the (lower) line of credit rate. Between the default rate and fees, by the time the amount was paid down, KISS paid $710,491.31 over and above the principal amount ($619,836.15 in interest and $90,655.16 in fees) – amounts which would never have been incurred if defendants had honored their guaranty.

            The KISS line secured only 50% of the total SJH debt to Wachovia. There were four other guarantors (the defendants here) who put up additional credit to Wachovia for SJH Capital. After the money went to Wachovia, KISS learned that Wachovia had been over secured by $1,132,912.85. From that amount, Wachovia returned 50% to Presidential ($584,414.93, which Presidential immediately sent to Comerica to bring its principal debt down to $12,135,873). But KISS still had to pay 6.25% interest and fees until the letter of credit balance was fully repaid (which took about seven months), so the Wachovia refund was more than offset by the Comerica default rate of interest and fees.

Declaration of Caroline Johnson, December 27, 2011, dkt 152, Ex. 1 at 136–38.

**B. PROCEDURAL BACKGROUND**

This case has had a long protracted history before the Court. Plaintiff initially moved for summary judgment against the Defendants on October 29, 2010. On January 8, 2011, in a written opinion, the Court continued Plaintiff's motion for summary judgment based upon two affidavits submitted by Defendants pursuant to Rule 56(d). The Court granted Defendants' requests to discover whether Third-party Defendant Sinatra had executed the Guaranty. After the Court's opinion and order, Third-party Defendant Sinatra testified at a deposition that he executed the Presidential Guaranty in or about July of 2008. Plaintiff then filed a motion renewing its previously continued motion for summary judgment.

On August 24, 2011, the Court granted Plaintiff's first Motion for Summary Judgment in part, finding there was no genuine dispute of fact that all of the Co-guarantors signed the Presidential Guaranty, but denied the motion to the extent that Plaintiff failed to produce sufficient evidence that it had paid Wachovia bank and triggered the Co-guarantors' obligations under the Presidential Guaranty. The Court permitted Plaintiff 45 days to file a supplemental motion addressing whether it paid its obligations to trigger the Co-guarantors' obligations. In response, Plaintiff timely filed a second Motion for Summary Judgment, purportedly providing the Court with evidence through the Affidavit of Caroline Johnson that it had paid Comerica and Wachovia. The Court denied Plaintiff's second Motion for Summary Judgment finding it unclear whether Plaintiff satisfied its obligations to trigger the Co-guarantors' duties under the Presidential Guaranty. The Court noted the fact that Plaintiff produced no financial documents that evidence wire transfers or payments from Wachovia to Comerica.

After the Court's decision, Plaintiff moved to have the Court reconsider its decision denying

Plaintiff's second Motion for Summary Judgment, which the Court denied. In its Motion for Reconsideration, however, Plaintiff attached additional evidence that the Court had not prevoiusly reviewed. Plaintiff also attached additional financial documents to its response to Defendant Pinkas' Motion to Stay. On January 27, 2012, the Court ordered Plaintiff to show cause why Plaintiff's newly submitted evidence had not been produced previously. On February 1, 2012, Plaintiff filed its response. On February 9, 2012, the Court entered an order withdrawing its show cause order against Plaintiff and permitting Defendants an opportunity to respond to Plaintiff's response.

### III. LEGAL STANDARD

Because of the current posture of this matter, the Court has reviewed the parties' submitted matters under the summary judgment standard pursuant to Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may

6

consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff argues that it has satisfied its obligation to Wachovia through the letter of credit issued by Comerica and thus, Defendants are obligated to repay Plaintiff as provided for in the Presidential Guaranty. In response, Defendants argue that satisfying Plaintiff's obligation to Wachovia through the letter of credit is insufficient to satisfy the explicit language in the Presidential Guaranty. Defendants argue that, based on the explicit language in the Presidential Guaranty, Plaintiff was required to make a Loan Guaranty Commitment Payment (as defined in the Presidential Guaranty and discussed by the Court below) to Wachovia before the Co-guarantors' obligations were triggered.

The Presidential Guaranty provides that it "shall be construed and enforced in accordance with the laws of the State of Michigan." The Presidential Guaranty, dkt 162, Ex. 2, at 4, ¶ 10. Under Michigan law, the language of a guaranty agreement is to be strictly interpreted, and is not to be "extended by implication beyond the terms of the contract." *Bandit Indus., Inc. v. Hobbs Int'l, Inc.*, 463 Mich. 504, 512 (2001). The Court has reviewed the language in the Presidential Guaranty and agrees with Plaintiff that it has satisfied its obligations under the Presidential Guaranty. The Presidential Guaranty provides, in relevant part:

> Presidential has agreed to grant a new Unconditional Guaranty (the "Unconditional Guaranty") dated as of July 21, 2008 in order to guaranty payment of a 59.38% portion of increased Loan, in a maximum not to exceed $13,000,000 ("Loan Guaranty Commitment"). Presidential would not give the Unconditional Guaranty except for the fact that the Guarantors have agreed to guaranty repayment to Presidential of any Loan Guaranty Commitment paid by it under the Unconditional Guaranty in excess of $3,000,000 (the "Loan Guaranty Commitment Payments"). Guarantors' aggregate obligations under this Guaranty will be referred to as the "Guaranteed Amount".

The Presidential Guaranty, dkt 162, Ex. 2, at 1 (emphasis omitted). The crux of Defendants' argument focuses on the language "Guarantors have agreed to guaranty repayment to [Plaintiff] of any Loan Guaranty Commitment *paid by it* under the Unconditional Guaranty." *Id.* (emphasis added). Specifically, Defendants assert that Comerica's letter of credit, which satisfied Plaintiff's obligation to Wachovia, does not fit within the meaning of the phrase "paid by it," "it" referring to Plaintiff. Rather, Defendants conclude that Plaintiff must had directly paid Wachovia.

The Court first notes that it is now clear that the parties do not dispute that Plaintiff's obligation to Wachovia has been satisfied. It is also indisputable based on the wire transfer records supplied to the Court that this obligation was satisfied at the time Comerica wire transferred the funds

8

to Wachovia pursuant to the letter of credit. *See* Declaration of Caroline Johnson, December 27, 2011, dkt 152, Ex. 1 at 136–38; Affidavit of Stephanie Zimmerman, dkt 152, Ex. 1, at 118. Therefore, the remaining issue before the Court is whether there is a genuine dispute of fact that satisfying Plaintiff's obligation to Wachovia through a letter of credit satisfies the terms of the Presidential Guaranty, which requires Defendants to repay Plaintiff for any Loan Guaranty Commitment "paid by [Plaintiff]" in excess of $3,000,000. The Court finds that Comerica's payment to Wachovia based on the letter of credit satisfies the phrase "paid by [Plaintiff]."

The Court first turns to the language of the Presidential Guaranty. While it requires the Loan Guaranty Commitment to be "paid by" Plaintiff, the language is further modified by the phrase "under the Unconditional Guaranty." The term "Unconditional Guaranty" refers to the Wachovia Guaranty entered into between Plaintiff and Wachovia. Under the Wachovia Guaranty, Plaintiff was required to make payment by maintaining "one or more Letters of Credit for the benefit of the Bank in an aggregate undrawn amount of $13,000,000." Wachovia Guaranty, dkt 162, Ex. 1, at 1. Plaintiff did acquire the letter of credit from Comerica in the undrawn amount of $13,000,000. When SJH defaulted, Wachovia drew on the Comerica letter of credit for payment of $13,000,000.[1] Plaintiff's obligation to Wachovia as contemplated in the Wachovia Guaranty was satisfied. The Court further finds that the letter of credit issued by Comerica, which satisfied Plaintiff's obligation to Wachovia, fits within the meaning of the language, "paid by [Plaintiff] under the Unconditional Guaranty." Furthermore, Defendants cite to no legal authority that the phrase "paid by [Plaintiff]" excludes satisfying the obligation through a letter of credit.

---

[1] As explained in the Declaration of Caroline Johnson, Wachovia calculated the actual amount owed to be lower and refunded the balance to Presidential.

Second, the flaw in Defendants' argument is further evidenced by applying it to alternative methods of payment that Plaintiff could have used. For instance, Plaintiff could have paid Wachovia with a credit card. Based on Defendants' argument, the credit company that issued that credit card has paid Wachovia, not Plaintiff, because Plaintiff did not "directly" pay Wachovia and now has an outstanding balance owed to the credit card company. As an additional example, Plaintiff could have paid Wachovia with money that it borrowed from Comerica. The loaned money Plaintiff obtained from Comerica then could have been satisfied by KISS. This would satisfy Defendants' interpretation that Plaintiff must pay Wachovia directly, yet the end result is not dissimilar to the financial transaction that occurred in this case. The end result in this example and in this case results in Plaintiff's obligation to Wachovia to have been satisfied and KISS having satisfied Plaintiff's obligation to Comerica. Defendant's argument appears to require Plaintiff to have paid Wachovia directly with money. The Court, however, notes that there is no term in the Presidential Guaranty that requires Plaintiff to make payment "directly" as Defendants' interpretation concludes. The Court finds it unreasonable to include the requirement that Plaintiff "directly" satisfy its obligation to Wachovia before Defendants' obligations were triggered under the Presidential Guaranty.[2]

Third, Defendant Pinkas' interpretation of the Presidential Guaranty is unpersuasive. According to Defendant Pinkas' response, "If [Plaintiff] paid Comerica $13 million (or any amount in excess of $3 million), then the guarantors would be obligated to reimburse [Plaintiff] for its payment to Comerica." Defendant Pinkas' interpretation is belied by the language in the Presidential

---

[2]Additionally, the record reflects that Defendants were aware when they signed the Presidential Guaranty that Wachovia had requested to be paid by Plaintiff through a letter of credit issued by an authorized bank. As the Court explained, the terms of the Presidential Guaranty directly refer to the Wachovia Guaranty. The Wachovia Guaranty clearly sets forth that Plaintiff was required to maintain a letter of credit upon which Wachovia could draw upon if SJH defaulted.

Guaranty. There are no terms in the Presidential Guaranty that require Plaintiff to satisfy its obligation to Comerica before Defendants' obligation is triggered.[3] As the Declaration of Caroline Johnson explains, Plaintiff was unable to pay Comerica the outstanding obligation because Defendants refused to honor the Presidential Guaranty. Plaintiff therefore made an arrangement with KISS, to which KISS satisfied the obligation to Comerica. The Court's previous concern regarding Comerica existed to the extent that it was unclear based on the discrepancies in Plaintiff's prior submitted evidence whether Comerica had paid Wachovia in accordance with the letter of credit and thus, Plaintiff's obligation to Wachovia was satisfied. Based on the evidence Plaintiff has now submitted to the Court, it is clear that Wachovia has been paid pursuant to the terms of the Presidential Guaranty. *See* dkt 152, Ex. 1, at 107–08 (bank records evidencing wire transfer).

Accordingly, the Presidential Guaranty provides that "Each [Co-guarantor] guarantees to [Plaintiff] the full and prompt payment of each [Co-guarantor's] Initial Commitment when and if [Plaintiff] makes a Loan Guaranty Commitment Payment." The Court therefore finds that Plaintiff has made the Loan Guaranty Commitment Payment, Plaintiff's obligation to Wachovia has been satisfied, and Defendants are obligated to make "full and prompt payment" to Plaintiff pursuant to the Presidential Guaranty.

## V. CONCLUSION

Accordingly, for the reasons stated above, the Court finds that there is no genuine dispute of fact that Plaintiff satisfied its obligations under the Presidential Guaranty. The Court therefore finds

---

[3] Even if such a term was present in the Presidential Guaranty, Plaintiff has no outstanding obligation to Comerica. *See* January 12, 2012, letter by Susan Zschering of Comerica, to Zimmerman, dkt 152, Ex. 1, at 106 ("[M]y investigation reveals that no indebtedness currently exists at this time owing from [Plaintiff] to Comerica under the referenced letter of credit transaction.").

that judgment enters in favor of Plaintiff against Defendant Pinkas, Campbell, Debbas, and Griffiths in the amount of the guaranty commitments as expressed in the Presidential Guaranty.

    IT IS SO ORDERED.

                                      s/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated: May 16, 2012

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 16, 2012.

                                      s/Marie E. Verlinde
                                      Case Manager
                                      (810) 984-3290